STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert PAULSON, Defendant-Appellant-Petitioner.

Supreme Court

*No. 80–1708–CR. Argued January 5, 1982.—*
*Decided February 2, 1982.*

(Also reported in 315 N.W.2d 350.)

For the defendant-petitioner there were briefs and oral argument by *Donna L. Hintze,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

COFFEY, J. This is a review of a decision of the court of appeals affirming a judgment of conviction of the defendant, Robert Paulson, and an order of the circuit court for Ozaukee county denying Paulson's postconviction motion for a new trial, Hon. WALTER J. SWIETLIK presiding. Robert Paulson was convicted of injury by conduct regardless of life, contrary to sec. 940.23, Stats., and subsequent thereto filed the postconviction motion for a new trial based upon an alleged error in the self-defense jury instruction. The appellate court affirmed the trial court judgment and order holding that Paulson's failure to object to the self-defense instruction at the jury instruction conference (sec. 805.13 (3)) constituted a waiver of the objection to the instruction.

Paulson's conviction arose out of a tavern fight in which one Jack Garbarek was stabbed outside of a Port Washington tavern on February 19, 1979. The stabbing followed an argument between Paulson and Garbarek.

The victim, Jack Garbarek, testified that while he was in the tavern he accidentally spilled a drink at the bar and an argument ensued when he refused to pay for another drink as Paulson suggested. The argument lasted

only a few minutes and immediately thereafter Garbarek prepared to leave the bar. On his way to the door, he passed Paulson and the two exchanged words again. Garbarek stated that during this verbal exchange, he grabbed Paulson by the collar and pushed him aside. At this time, Paulson followed him out of the tavern and within seconds, stabbed him in the stomach. Garbarek stated that as far as he knew no one witnessed the actual stabbing. A conflicting version of the incident was presented by the defense witnesses.

Paulson, the defendant, testified that shortly before the incident, he was "pretty well drunk" and decided to put on his jacket and leave the tavern. While preparing to leave, he noticed an argument between two men and Garbarek, concerning a spilled drink. During the argument, Garbarek turned to him and made a snide comment regarding the trouble Paulson was having zipping his jacket. Paulson stated that he replied to this comment and an argument followed. At this time, some ladies came over and informed Garbarek that they were leaving and Garbarek proceeded to follow them out and, according to Paulson, Garbarek changed his mind, turned around, grabbed Paulson by the collar of his jacket and pulled him out of the bar, down the steps and onto the ground.

Paulson stated that Garbarek struck him twice in the face as they exited the tavern, once in the cheek as he was being dragged out of the bar and then again as he attempted to get up from the ground. Paulson further recounted that while on the ground, he removed a pocket knife from his pants and opened the blade. Paulson stated that as he began to get up he again saw Garbarek come at him, attempting to throw a third punch and at this time he swung the knife at Garbarek and injured him.

Paulson's trial testimony was inconsistent with a prior statement he gave to the police in that there is no mention

in the police report of Garbarek's striking Paulson prior to the stabbing. Also, Paulson's statement to the police reflects that he (Paulson) warned Garbarek that if he "came at" him he would stab him.

Paulson's trial testimony that he was struck by Garbarek prior to the stabbing was corroborated in part by the testimony of other defense witnesses.

Paulson's defense theory at trial was that he only stabbed Garbarek in self-defense. In a conference held to discuss instructions, the defendant's attorney requested that the court give "Privilege: Self-Defense: Force Less Than Likely to Cause Death or Great Bodily Harm." Wis. JI—Criminal, Part I, 800. The prosecution did not object to the defendant's request for this instruction and the court informed counsel on the record that he would read that instruction to the jury. After the close of testimony, among the other instructions, the trial court read Wis. JI —Criminal, Part I, 800 and neither during the reading, nor upon the completion thereof did the defense attorney or the district attorney enter any objection.

The jury returned a verdict finding Paulson guilty of injury by conduct regardless of life as charged in the information and the court entered a judgment of conviction and sentenced the defendant to a three year term of confinement.

Approximately five months after trial, the defendant filed a post-conviction motion requesting a new trial and alleging for the first time that the self-defense jury instruction he requested of the court was "erroneous, misleading, and deprived the defendant of his defense." The defendant's alleged error in the instruction was the inclusion of the word "intentionally" in the portion of the instruction set out below:

"If you find that the defendant *did intentionally cause injury by conduct regardless of life* to Jack Garbarek, as charged in the Information, but that he [did] so under

the circumstances that under the law of self-defense as it has been explained to you, such use of force was privileged, then you must find the defendant not guilty, giving him the benefit of any reasonable doubt as to whether his conduct was privileged under the law of self-defense." (Emphasis supplied.)

The defendant argued that the word "intentionally" as recited in the instruction required the jury to find that Paulson "intentionally" caused injury by conduct regardless of life prior to considering whether the conduct was privileged under the law of self-defense. Since intent is not an element of the offense of injury by conduct regardless of life and there had been no proof of intent at trial, Paulson argued that a requirement that the jury find intent made the instruction erroneous.

After a hearing, the trial court denied the motion ruling that the instructions were fair and did not mislead the jury, that the verdict was supported by the evidence and if, in fact, the instruction was erroneous, it did not constitute reversible error. The trial court pointed out that self-defense constitutes an intentional act. The trial court also noted that the defense counsel not only failed to object to the wording of the instruction at the jury instruction review conference but, in fact, had requested the instruction.

Paulson appealed from the judgment of conviction and the order denying his post-conviction motion regarding the allegedly improper jury instruction. The court of appeals affirmed the trial court holding that Paulson's failure to object at the jury instruction conference waived any objection he had to the instruction, pursuant to sec. 805.13(3), Stats. The court further declined to exercise its discretion to consider whether the erroneous instruction required a new trial in spite of the defendant's waiver of any objection to the instruction.

*Issue*

1. Did the defendant waive any objection to the jury instruction when he failed to object to and requested the standard instruction given although he was not informed of the alternate language chosen by the trial court?

2. Does allegedly erroneous language of the self-defense jury instruction constitute plain error when the instruction is read in its entirety?

*Waiver*

The requirement that counsel object to proposed jury instructions at the instruction and verdict conference or be deemed to have waived any error in the proposed instruction is stated in sec. 805.13(3), Stats.:

"(3) INSTRUCTION AND VERDICT CONFERENCE. At the close of the evidence and before arguments to the jury, the court shall conduct a conference with counsel outside the presence of the jury. At the conference, or at such earlier time as the court reasonably directs, counsel may file written motions that the court instruct the jury on the law, and submit verdict questions, as set forth in the motions. The court shall inform counsel on the record of its proposed action on the motions and of the instructions and verdict it proposes to submit. Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict."

The requirements of sec. 805.13(3), Stats., are applicable to criminal cases by virtue of sec. 972.11(1), which provides as follows:

"972.11 **Evidence and practice; civil rules applicable.** (1) Except as provided in sub. (2), the rules of evidence and practice in civil actions shall be applicable in all criminal proceedings unless the context of a section or rule manifestly requires a different construction. . . ." Sec. 972.11(1), Stats.

*See also: State v. Dix,* 86 Wis. 2d 474, 485–86, 273 N.W. 2d 250 (1979), in which this court approved the application of sec. 805.13(3), Stats., in a criminal case.

On this appeal, the defendant acknowledges that he failed to object to the jury instruction, either at the time that the court reviewed the proposed jury instructions, or at the time the instruction was read to the jury, or at any time before the entry of judgment in the case, but only raised his objection some five months after the entry of the jury verdict. He contends, however, that sec. 805.13 (3), Stats., requires that the court advise counsel of the precise language to be used in the instructions and that a failure to object to a proposed instruction does not constitute a waiver of any objection to the precise language of the instruction where the trial court does not inform counsel of the exact language it intends to use. Based on this contention, the defendant argues that he did not waive his right to object to the self-defense jury instruction because the trial court never advised him of the alternate phrases that he would use in the standard jury instruction.

The portion of Wis. JI—Criminal, Part I, 800 requested by defense counsel and relevant to this dispute reads as follows:

"If you find that the defendant did intentionally (cause bodily harm) (etc.) to _____ , as (charged in the complaint) (submitted) but that he did so under such circumstances that under the law of self-defense as it has been explained to you, such use of force was privileged, then you must find the defendant not guilty, giving him the benefit of any reasonable doubt as to whether his conduct was privileged under the law of self-defense."

The trial court's only modification of this paragraph referred to as the self-defense instruction (Wis. JI—Criminal, Part I, 800) was the insertion of the phrases *"cause injury by conduct regardless of life", "Jack Gar-*

*barek"*, and *"charged in the information"* in the appropriate places. The defendant's main argument is with the word "intentionally" but the trial court did not add the qualifying term "intentionally" which the defendant claims renders the instruction erroneous as it is part of the standard instruction (Wis. JI—Criminal, Part I, 800) requested by the defendant. Thus, the defendant cannot claim that he was not advised of the allegedly erroneous language as it was contained in the instruction he specifically requested. Rather, when the defense counsel requested the instruction, he was presumed to have known its contents, and, if not acceptable, it was his duty to have requested or proposed appropriate modifications.

While the defendant argues that the insertion of the phrase "cause injury by conduct regardless of life" after the term "intentionally" changes the precise language of the instruction, we note that had the trial court used the phrase "cause bodily harm" as suggested in the standard instruction, the instruction would have still theoretically given the jury the inference that it must find an "intent to cause harm" which is not an element of the crime. Thus, the defendant could still argue that the instruction erroneously required the jury to find intent even if the trial court had followed the standard instruction requested and not objected to by the defendant.

Since at the time the defendant specifically requested the standard jury instruction it contained the very language which the defendant now contends is erroneous, Paulson was put on notice that the objected to language would be included in the instruction. As the defendant had or should have had prior knowledge of the contents of Wis. JI—Criminal, Part I, 800, this case does not present the issue raised by the defendant of whether the defendant's right to object to the instruction would have been waived if he had not been advised of the objected

to language prior to the time the jury was instructed. Thus, we hold that the failure of defense counsel to object to the instruction, stating the grounds for the objection with particularity, on the record constitutes a waiver of any error in the instruction, pursuant to sec. 805.13 (3), Stats.

Defense counsel cannot be permitted to request a particular jury instruction which he believes to be erroneous when applied to the facts of his case and then be allowed to object to this same instruction after an unfavorable verdict is received. Where a proposed jury instruction allows for the insertion of alternate phrases depending on the facts of the case, it is incumbent on counsel to bring to the trial court's attention appropriate alternatives which will result in an error free instruction. This is especially true where counsel, after thorough preparation for trial, due deliberation and research, requests a particular instruction that requires the selection and insertion of alternate phrases.

*Plain Error*

The defendant contends that the intent language of the self-defense jury instruction constitutes plain error and thus he requests that this court exercise its discretion to consider whether the jury instruction mandates reversal in this case regardless of the waiver of any error through his failure to object to the instruction. The appellate court refused to exercise such discretion citing as its reasons the fact that the defendant himself requested the erroneous instruction. Although we do not find error in the court of appeals' refusal to review the jury instruction, we choose to exercise our independent discretion and consider the alleged error.

The test which this court has applied where a party contends that a jury instruction should be reviewed on

appeal in spite of a waiver of objections is whether the error is so plain or fundamental as to affect the defendant's substantial rights.[1]

"It is well established that even where there is no timely objection in the trial court, errors in instruction may be reviewed on appeal, even on the court's own motion, where the error is so plain or fundamental as to affect substantial rights of the defendant. Of course, a defendant is faced with a heavy burden when he has acquiesced in the instructions given by the trial court. We conclude to exercise our discretionary power of review in the instant case and to do so notwithstanding the plain waiver of the alleged error by the defendant. In doing so, the defendant must show that his substantial rights have been affected." *Claybrooks v. State,* 50 Wis. 2d 79, 84–85, 183 N.W.2d 139 (1971).

In *Lunde v. State,* 85 Wis. 2d 80, 270 N.W.2d 180 (1978), we used the following language to further explain the procedure used when applying the "plain error" test.

"Under this test, the question then becomes not whether the unobjected-to instructions were erroneous, but whether the error was so plain or fundamental as to affect the substantial rights of the defendant. The application of this test necessarily results in a process of circuitous reasoning, for the rule is that the alleged error will not be looked into if no objection has been appropriately made; but the exception to the rule provides that, even where no objection has been made, the court will take cognizance of the alleged error if the error is plain or fundamental. Obviously, therefore, the nature of the error must be inquired into before it can be determined whether the court will consider it further." *Id.* at 88.

---

[1] This test is set out in sec. 901.03(4), Stats., as follows: "901.03 . . .

"(4) PLAIN ERROR. Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge." *See also:* sec. 805.18(2), Stats., which contains this same standard.

From this case law, it is clear that the defendant must establish not only that an error exists but also that that error is so plain or fundamental as to affect the substantial rights of the defendant.

Paulson relies heavily on the decision of this court in *Werner v. State,* 66 Wis. 2d 736, 226 N.W.2d 402 (1975), to support his contention that the self-defense jury instruction read in the case at bar was erroneous and affected his substantial rights. In *Werner,* this court reversed a second-degree murder conviction, both because the self-defense jury instruction erroneously required a finding of intent to cause death before the jury could consider the defendant's self-defense claim and because the error "crucially" related to that claim. *Id.* at 751. Since the crime of second-degree murder does not require proof of intent to commit murder, we concluded the instruction may have prevented the jury from considering the question of self-defense in that case. In *Werner,* as in the case at bar, the defendant failed to object to the self-defense instruction at trial.

In light of our decision in *Werner,* it is clear that the sentence of the jury instruction containing the term "intentionally" is erroneous as proof of specific intent is not an element of the crime of causing injury by conduct regardless of life, contrary to sec. 940.23, Stats. While the portion of the self-defense instruction objected to is erroneous to a degree in this factual situation because of the inclusion of the word "intentionally," the real question is whether this error affected the substantial rights of the defendant and thus constitutes plain error. Regarding this question of whether the error in the self-defense jury instruction affected substantial rights of the defendant in this case, we point out that there are several significant distinctions between the *Werner* case and the case at bar.

We prefaced our consideration of the jury instruction in *Werner* by noting that the paragraph objected to was the only reference in the entire jury instruction informing the jury that if the defendant's conduct was privileged under the law of self-defense, he must be found not guilty.

"Prior to this instruction the trial court had explained generally the law of self-defense. However, this was the only instruction informing the jury that if defendant's conduct was privileged under the law of self-defense, he must be found not guilty. Later instructions related to second-degree murder/no privilege of self-defense, and manslaughter/unreasonable force in exercise of privilege of self-defense." *Id.* at 748.

In the case at bar, however, the sentence immediately following the erroneous language instructed the jury that they could not find the defendant guilty unless they found that his conduct was not privileged under the law of self-defense.

"In other words, before you can find the defendant guilty of the offense charged, you must be satisfied beyond a reasonable doubt from the evidence in this case that any use of force by him against Jack Garbarek, if such force was so used, was not privileged under the law of self-defense as it has been defined for you."

Similarly, the underlying theme of the entire jury instruction read in this case was that the jury must find the defendant not guilty if his conduct was privileged under the law of self-defense.

Thus, the language of the jury instruction in the case at bar indicating that the jury must find the defendant not guilty if they find that he acted in self-defense was the specific language which we noted was absent in *Werner* and could have cured the reversible error in the self-defense instruction.

It is a well established rule that if the jury instructions, when considered as a whole and in their entirety, render the error harmless because the overall meaning communicated by the instruction was a correct statement of the law, there are no grounds for reversal based upon that error.

"In evaluating instructions given to a jury, we recognize they are to be considered in their entirety; and if the error is rendered harmless because of other correct statements of law contained in the instructions, there are no grounds for reversal. Furthermore, even if the error is not rendered harmless by other portions of the instructions, there is no reversible error unless it may reasonably be said that, had the error not been made, the verdict might probably have been different." *Moes v. State,* 91 Wis. 2d 756, 768, 284 N.W.2d 66 (1979).

The portion of the jury instruction in the case at bar which directly followed the erroneous language in the instruction was one of several correct statements of the law of self-defense found in the instruction and rendered the error in the jury instruction harmless. On review, the language of a jury instruction should not be fractured into segments, one or two of which, when considered separately and out of context, might arguably be in error. Rather, the instruction must be read as a whole and for there to be reversible error, the error must permeate the underlying meaning of the instruction.

Besides the fact that the jury instruction in this case contained language which we pointed out in *Werner* would have cured the erroneous inclusion of the word intentionally in the jury instruction, we also note that the case at bar is distinguishable from *Werner* because the jury in this case was only required to find guilt or innocence of the crime charged and was not required to consider any lesser included crimes. In *Werner,* we

emphasized the fact that a lesser included crime was submitted to the jury and a properly instructed jury might have chosen to convict on the lesser offense in reaching our conclusion that the instruction was harmful.

"In view of the fact that, if properly instructed, the jury, with the evidence before it, could have reasonably returned either a second-degree murder or manslaughter verdict in addition to the alternative of 'not guilty' based on self-defense, we conclude that the error in instruction was harmful and requires a retrial." *Werner v. State, supra* at 750.

In the case at bar, the jury focused only on the question of the defendant's guilt or innocence and had no choice of a lesser included offense and thus the potential that the erroneous language in the jury instructions could have misled the jury was minimal.

Finally, we point out that while the erroneous instruction in *Werner* required the jury to find "intent to cause death" the instruction in the case at bar only required that the jury find "intent to cause injury" before considering the question of self-defense. It is well established in law and common sense that a person exercising the privilege of self-defense either intends to use force or threatens the use of force as we set forth in the decision of this court in *State v. Johnnies,* 76 Wis. 2d 578, 251 N.W.2d 807 (1977). "A person exercising the privilege of self-defense intends to use force or threaten force against another for the purpose of self-defense." *Id.* at 584. The distinction between intent to use force in self-defense and intent to cause injury is fine and highly technical at its best, whereas the distinction between intent to cause death and intent to use force is clear and undisputed. Considering the intentional conduct required in the *Werner* instruction as contrasted to the intentional conduct required by the instruction in the case at bar, it is clear that the potential for a juror to be misled was

significantly greater in *Werner* than in the instruction in this case as there is only a fine distinction between the intent to use force which the defendant impliedly admitted when arguing self-defense and the intent required by the jury instruction.

In light of the correct statements of law contained in the jury instruction which, when read and considered as a whole, rendered the error in the instruction harmless; the lack of a lesser included offense; and the slight distinction in the intent admitted by the defendant when arguing self-defense and that required in the jury instruction, we hold that this case is distinguishable from *Werner* and that under the facts of the case at bar the error in the jury instruction was not so plain or fundamental as to affect the substantial rights of the defendant and therefore does not constitute plain error.[2]

*By the Court.*—The decision of the Court of Appeals is affirmed.

---

[2] Implicit in our holding that the error in the jury instruction did not constitute plain error is our conclusion that the error in the jury instruction did not deprive the defendant of his due process right to have the jury consider his defense and, therefore, the error does not rise to the level of "constitutional error" as the defendant contends in this appeal.