James Bryhan and Geralyn Bryhan,
Plaintiffs-Respondents,

v.

Dan Pink d/b/a Pink Farms and
Andy Pink d/b/a Pink Farms,
Defendants-Appellants.

Court of Appeals

*No. 2005AP1030. Submitted on briefs October 13, 2005.
—Decided May 18, 2006.*

2006 WI App 111

(Also reported in 718 N.W.2d 112.)

On behalf of the defendants-appellants, the cause was submitted on the brief of *Davin C. Curtiss* of *O'Connor & Thomas, P.C.*, Dubuque, Iowa.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Craig R. Day*, of Law Office of *Craig R. Day*, Lancaster.

Before Dykman, Vergeront and Deininger, JJ.

¶ 1. DYKMAN, J. Dan and Andy Pink d/b/a Pink Farms appeal from a small claims judgment requiring them to pay $5,000 to James and Geralyn Bryan for damage to the Bryans' lawn caused when fifteen to twenty of Pink Farms' cattle wandered through an open gate onto the Bryans' property. Pink Farms contends the trial court erred in holding it liable for the Bryans' damages, or, at a minimum, erred in concluding that their share of negligence was equal to that of the Bryans' share. It further contends the trial court erred in calculating the damage award by applying the Bryans' share of negligence to the Bryans' actual damages rather than to the $5,000 statutory limit for small claims awards. Because we conclude that the trial court's factual findings concerning the question of negligence were not clearly erroneous and that the trial court properly calculated the amount of the damage award, we affirm.

## BACKGROUND

¶ 2. One morning in early March 2004, fifteen to twenty Holstein cows owned by Pink Farms passed through an open gate separating Pink Farms' pasture and the Bryans' residential backyard. A neighbor dis-

covered that the cows were out—the Bryans were on vacation at the time—and informed the Pinks. Andrew Pink went to the Bryans' and herded the cows back into his pasture. The ground was soft and muddy, and when the Bryans returned they found their lawn pocked with cattle tracks. The Bryans eventually brought this small claims action against Pink Farms seeking damages for the repair of their lawn.

¶ 3. At trial, Andrew Pink testified that the gate appeared to have been purposefully opened because it was neatly propped up against the fence and not lying on the ground. He stated that the Pinks had never used the gate in his fifty-three years on the farm, but that snowmobilers had used it in the past to gain access to Pink Farms' property. He said that while he had given the local snowmobile club permission to go through his property in the past, he had not done so in the winter of 2003–04. He testified that Bryan told him shortly after the incident that Bryan had given permission to the snowmobile club to pass through the Bryans' land. Pink stated that during the winter, his cows stayed close to the barn, but when the weather warmed up they would wander out to pasture. He said that each spring he checked the fences before the cows went out to pasture, but had not yet done so in 2004 despite an early thaw. He further testified that it was standard practice for farmers to check their fences regularly. He testified that he had inventoried his cattle the morning before the incident and all were accounted for. James Bryan testified that he had not inspected the fence in the winter of 2003–04 and did not know how long the gate had been left open or who had opened it. Bryan and Pink each offered evidence that the other was responsible for maintaining the section of the fence containing the gate.

¶ 4. At the conclusion of the proceeding, the court found that the gate had most likely been opened by snowmobilers or cross-country skiers and had been left open for some time. The court based this finding on the neat manner in which the gate was propped against the fence, indicating that it was purposefully opened and not blown open by the elements or by a mischief maker.

¶ 5. The trial court found that the question of which party was responsible for maintaining the portion of the fence containing the gate was a red herring and that the relevant issue was the parties' respective duties to ascertain whether the gate was closed. As to the Bryans, the court found that they had a duty to protect their property from outside damage to the extent they could, and that, given the length of time the gate was likely left open and its proximity to their house, they should have noticed the open gate and shut it. The court found, based on Andrew Pink's testimony about Pink Farms' past practices and the customs of area farmers, that Pink Farms had a duty to check its fences before its cows went out to pasture in the spring, and that it had failed to do so despite the warm March weather. The court ultimately found that the Bryans and Pink Farms were equally liable for the damages to the Bryans' lawn.

¶ 6. The court calculated the Bryans' total damages at $12,000. It reduced this amount to account for the Bryans' own negligence, determining the Bryans' allowable damages to be $6,000. The court awarded the Bryans $5,000, the statutory limit on small claims awards and the amount sought by the Bryans. Pink Farms appeals.[1]

---

[1] This appeal was assigned to one judge pursuant to WIS. STAT. § 752.31(2)(a) (2003–04). The chief judge ordered it heard

## Discussion

¶ 7. On appeal, Pink Farms raises two issues. First, it challenges the trial court's determination that it was negligent and the court's apportionment of comparative negligence. Second, it contends that the trial court erred in calculating the amount of the damage award by applying its comparative negligence determination to the Bryans' total damages of $12,000 and not the small claims award limit of $5,000. We address each issue in turn.

### *Negligence and Comparative Negligence*

¶ 8. A keeper of a domesticated animal must exercise ordinary care in controlling the characteristics normal to the animal's class. *White v. Leeder*, 149 Wis. 2d 948, 955, 440 N.W.2d 557 (1989). The existence of negligence is a mixed question of fact and law that is generally left to the fact finder. *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 233, 568 N.W.2d 31 (Ct. App. 1997). A trial court's findings of fact will not be overturned unless they are clearly erroneous. WIS. STAT. § 805.17(2). Whether the facts as found violate a particular duty is a question of law that we review de novo. *Hatleberg v. Norwest Bank Wis.*, 2005 WI 109, ¶ 15, 283 Wis. 2d 234, 700 N.W.2d 15. We will sustain an apportionment of negligence unless the trial court's determination is clearly erroneous. *Voigt v. Riesterer*, 187 Wis. 2d 459, 467, 523 N.W.2d 133 (Ct. App. 1994).

by a three-judge panel. *See* § 752.31(3). All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 9. Pink Farms contends that the trial court record demonstrates that it exercised ordinary care in managing its cattle, and that, under the facts of this case, the trial court could not have found it negligent. Pink Farms notes that uncontroverted testimony showed that Andrew Pink inventoried the cattle the morning before the incident; that the fence and gate were in a state of good repair; that Pink Farms inspected the fence each spring; and that Pink Farms had not used the gate for any purpose in fifty-three years. Further, Pink Farms asserts that the evidence established that the gate was on the half of the fence that the Bryans were responsible for maintaining under an arrangement dating back several generations between the owners of the two properties. Moreover, the gate was visible from the Bryans' residence and was far from the Pinks' home. Pink Farms further notes that no evidence was presented showing that Pink Farms had given anyone permission to open the gate or that they knew when or for how long the gate had been opened. Pink Farms asserts that because these facts demonstrate that it exercised due care, the trial court, in effect, erroneously held it to a standard of strict liability for the damage caused by its livestock. We disagree.

¶ 10. Based on Andrew Pink's testimony, the trial court could reasonably determine that Pink Farms was negligent in failing to ensure that the gate was closed. Pink testified that his cattle went to pasture when the weather warmed up, and that he had not checked the fences yet this year despite the spring-like temperatures that March. The trial court found that Pink Farms had a duty to check the fence based on Andrew Pink's testimony that it was the custom of area farmers to do so before letting their cows out to pasture in the

spring. The court could reasonably conclude that failure to check its fences to prevent its cows from wandering off was negligent when Pink Farms knew the cows would venture into the pasture when the weather warmed up. Further, the trial court could reasonably conclude Pink Farms had particular reason to check its gate because, according to Andrew Pink's testimony, snowmobilers had used it in previous years.

¶ 11. Pink Farms contends that, at a minimum, the trial court's apportionment of negligence should be set aside because Pink Farms' negligence was far less than the negligence of the Bryans. We again disagree. The court reasonably found that the Bryans' obligation was based on their proximity to the gate and their duty to protect their property, while Pink Farms had a duty to check the fence in the spring to ensure that its cattle did not wander off its property. The trial court's determination that these respective obligations were equal was not clearly erroneous.

### Calculation of the Damage Award

¶ 12. In calculating the Bryans' damage award, the trial court determined the Bryans' actual damages to be $12,000, and reduced this figure to $6,000 to account for the Bryans' fifty percent negligence. It then awarded the $5,000 statutory maximum for small claims actions. Wis. Stat. § 799.01(1). Pink Farms contends the trial court erred in its calculation and should have started with the $5,000 statutory damages limit and reduced this figure by the Bryans' share of negligence. Whether a comparative negligence determination is applied to the actual damages or the small claims

award limit of $5,000 when determining the damage award is a question of first impression in Wisconsin.

¶ 13. To resolve this issue, we must examine Wisconsin's limitation on small claims actions provided in Wis. Stat. § 799.01(1)(d), and the comparative negligence statute, Wis. Stat. § 895.045(1). Statutory interpretation is a question of law that we review de novo. *Rocker v. USAA Cas. Ins. Co.*, 2006 WI 26, ¶ 23, 289 Wis.2d 294, 711 N.W.2d 634.

¶ 14. Wisconsin Stat. § 799.01(1) provides that "the procedure in [the small claims chapter of the Wisconsin statutes] is the exclusive procedure to be used in circuit court in . . . (d) . . . actions where the amount claimed is $5,000 or less, if the proceedings are . . . 1. [f]or money judgments only. " Wisconsin Stat. § 895.045(1) provides that "any damages allowed shall be diminished in the proportion to the amount of negligence attributed to the person recovering."

¶ 15. Pink Farms contends that under Wis. Stat. § 799.01(1) a small claims court exceeds its jurisdiction if it "entertain[s] claimed damages in excess of $5,000" even if the final award is $5,000 or less. Further, Pink Farms contends that because Wis. Stat. § 895.045(1) provides that a damage award to be reduced by the recovering party's negligence begins with "any damages allowed," the trial court erred in applying the Bryans' fifty percent comparative fault to an amount greater than the $5,000 "allowed" in small claims actions. There are several problems with Pink Farms' analysis.

¶ 16. Pink Farms' view of Wis. Stat. § 799.01(1)(d) is contrary to the plain language of the statute. Small claims procedure is available to plaintiffs for whom the "amount claimed is $5,000 or less," § 799.01(1)(d). The

355

Bryans were prohibited from claiming more than $5,000 by this statute, and their small claims summons and complaint demanded that amount. A plaintiff may elect to sue in small claims court to save time and expense even when actual damages exceed $5,000. The small claims award limitation is a limit on recovery, not a bar that denies the court jurisdiction over cases in which the plaintiff's actual damages exceed $5,000.

¶ 17. Turning to WIS. STAT. § 895.045, the Wisconsin Supreme Court has previously considered that statute in relation to another statute limiting recovery, the wrongful death award limitation. In *Mueller v. Silver Fleet Trucking Co.*, 254 Wis. 458, 37 N.W.2d 66 (1949), a widow sued Silver Fleet, alleging that the negligence of one of its drivers caused the wrongful death of her husband. A jury attributed ninety percent of the negligence to the driver, and ten percent to Mr. Mueller. *Id.* at 462. It determined that Ms. Mueller's damages for the death of her husband and loss of companionship were $40,200. *Id.* In calculating the award, the trial court reduced the jury's damage assessment to the wrongful death award limitation of $15,000, then reduced this amount by Mr. Mueller's share of negligence. *Id.*

¶ 18. The supreme court modified Ms. Mueller's award, concluding that the trial court erred when it reduced the jury's $40,200 damage finding to the $15,000 statutory limit on wrongful death judgments before applying the jury's comparative negligence determination. *Id.* at 466–67. Construing the comparative negligence statute, WIS. STAT. § 331.045 (1947–48),[2] the

---

[2] The pertinent language of WIS. STAT. § 331.045 (1947–48) is nearly identical to the present WIS. STAT. § 895.045: "any damages allowed shall be diminished by the jury in the propor-

*Mueller* court interpreted the phrase "damages allowed" to mean the total amount of the plaintiff's damages, and not the $15,000 statutory limitation on wrongful death awards. It explained:

> The statute provides that the damages allowed shall be diminished by the jury in proportion to the amount of negligence attributable to the person recovering. "Damages allowed" are clearly the total amount found by the jury to be the damage sustained by the plaintiff. This is the amount to be diminished by the jury in proportion to the amount of negligence attributable to the plaintiff. Here the jury allowed the plaintiff damages in the total amount of $40,200. This amount under the finding of the jury should be diminished by ten percent. This leaves a remainder of $36,180, which is the amount which the plaintiff would be entitled to recover if it were not for the provisions of sec. 331.04, Stats. In accordance with the provisions of that section the plaintiff cannot have judgment for damages in an amount in excess of $15,000. Therefore the judgment must be for that amount plus the costs.

*Mueller*, 254 Wis. at 466–67.

¶ 19. The supreme court affirmed *Mueller's* interpretation of the comparative negligence statute in *Chang v. State Farm Mut. Ins. Co.*, 182 Wis. 2d 549, 514 N.W.2d 399 (1994). The *Chang* court reiterated that

> a party-beneficiary may prove damages in excess of the statutory maximum, suffer a reduction in those damages for contributory negligence pursuant to sections 895.04(7) and 895.045, Stats., and still be entitled to collect up to the statutory maximum, assuming that damages equal to or greater than the statutory maxi-

tion to the amount of negligence attributable to the person recovering." The present version has dropped "by the jury" and has replaced "attributable" with "attributed."

mum remain after reductions have been made for his or her contributory negligence.

*Id.* at 566. Significantly, *Chang* withdrew language in *Rineck v. Johnson*, 155 Wis. 2d 659, 456 N.W. 336 (1990), a medical malpractice case, that appeared to suggest that the reduction of noneconomic damages to the statutory limit in Wis. Stat. § 895.04(7) (1993–94) should precede reduction for comparative fault. *Id.* The *Chang* court thus signaled that its interpretation of the comparative negligence statute was not restricted to the wrongful death context, but also applied to other types of claims in which the award is limited by statute.

¶ 20. Accordingly, we conclude that when a trial court finds that a small claims plaintiff's actual damages exceed the statutory award limit of $5,000, the court should apply any reduction for comparative negligence to the damages found before applying the statutory limit. We therefore affirm.

*By the Court.*—Judgment affirmed.