Linda L. Olson, Plaintiff-Appellant,

Lands' End, Inc., Subrogated-Plaintiff,

v.

Darlington Mutual Insurance Company,
Catherine J. Weber and Dennis Weber,
Defendants-Respondents,†

Robbins & Myers, Inc. and
ABC Insurance Company,
Defendants.

Court of Appeals

*No. 2005AP1613. Submitted on briefs February 6, 2006.
—Decided September 21, 2006.*

2006 WI App 204

(Also reported in 723 N.W.2d 713.)

† Petition to review denied 1/11/07.

716

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Sheila Stuart Kelley* of *Kopp, McKichan, Geyer, Skemp & Stombaugh*, LLP, Platteville.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Arnold P. Anderson* of *Mohr & Anderson, LLC*, Madison.

Before Dykman, Deininger and Higginbotham, JJ.

¶ 1. DYKMAN, J. Linda L. Olson appeals from a non-final order compelling her to disclose to the remaining defendants the confidential settlement amount she received as a result of a *Pierringer*[1] release with defendant Robbins & Meyers, Inc. The remaining joint tort-feasors are Darlington Mutual Insurance Company and its insureds, Catherine J. Weber and Dennis Weber (collectively "Darlington"). Olson contends the trial court erred by compelling disclosure because the confidential settlement amount and the

---

[1] *Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

jurisdictional limit pleaded in her complaint are not inconsistent assertions. We agree and therefore reverse.[2]

## Background

¶ 2. The parties do not dispute the following facts. Linda L. Olson was injured at the Weber barn when her elbow came into contact with a large fan. Olson sued the Webers (owners of the farm), Darlington (their insurance company), and Robbins & Meyers (the manufacturer of the fan). In her complaint, Olson demanded judgment not to equal or exceed the amount necessary for removal to federal court, $75,000. Olson then entered into a confidential *Pierringer* release with defendant Robbins & Meyers, dismissing them from the litigation. Darlington moved the court to compel disclosure of the settlement amount, asserting that Olson's request for less than $75,000 in her complaint to avoid removal to federal court precluded her from maintaining the confidentiality of the amount of the settlement. The trial court granted the motion to compel under the doctrine of judicial estoppel and "simple fairness," finding that Olson was required to disclose the settlement amount to allow Darlington to assess its remaining

---

[2] Because we conclude it was error for the trial court to compel disclosure at this point in the litigation, it is not necessary for us to reach the parties' arguments over the effect of the *Pierringer* release on the amount ultimately recoverable in the case or whether the settlement amount is admissible at trial. While the trial court did not address admissibility of the settlement amount in its order, it indicated in the hearing on the motion that it believed disclosure was compelled under *Pierringer* for the jury to determine the causal negligence of the remaining joint tort-feasors. We decline to decide whether *Pierringer* compels disclosure during trial.

potential liability within Olson's asserted $75,000 of damages.[3] We granted Olson leave to appeal the order.

### Standard of Review

¶ 3. Darlington argues that Olson has the burden to prove that the trial court erroneously exercised its discretion by invoking judicial estoppel and, absent that showing, we may not address the issue on its merits. We disagree. Whether the elements of judicial estoppel have been met by the facts in a particular case is a question of law for appellate courts, reviewable de novo. *Salveson v. Douglas County*, 2001 WI 100, ¶ 38, 245 Wis. 2d 497, 630 N.W.2d 182. Once those elements have been met, it is within the discretion of the trial court whether to invoke the doctrine. *Id.* Thus, we review whether the elements of judicial estoppel apply to the facts of this case de novo.

### Discussion

¶ 4. Judicial estoppel is properly invoked "to prevent a party from adopting inconsistent positions in

---

[3] Darlington argues, and the trial court agreed, that Olson's failure to disclose the settlement amount would impede their settlement negotiations, contrary to public policy favoring settlement. *See Schulte v. Frazin*, 176 Wis. 2d 622, 634, 500 N.W.2d 305 (1993). We disagree. We see no reason why Darlington cannot determine its own settlement offer without knowing the settlement Olson reached with Robbins & Meyers. Forcing disclosure of the settlement amount a plaintiff reached with one joint tort-feasor may work to impede future settlements, if it encourages parties to wait for others to settle before submitting their own offers. Further, Darlington has not sufficiently developed the argument that "simple fairness" compels disclosure.

legal proceedings." *State v. English-Lancaster*, 2002 WI
App 74, ¶ 18, 252 Wis. 2d 388, 642 N.W.2d 627 (citing
*State v. Petty*, 201 Wis. 2d 337, 347, 548 N.W.2d 817
(1996)). Further, "[t]he purpose of judicial estoppel is to
preserve the integrity of the judicial system and prevent
litigants from playing 'fast and loose' with the courts."
*Id.* (citing *Harrison v. LIRC*, 187 Wis. 2d 491, 497, 523
N.W.2d 138 (Ct. App. 1994)). The required elements of
judicial estoppel are:

> First, the later position must be clearly inconsistent
> with the earlier position; second, the facts at issue
> should be the same in both cases; and finally, the party
> to be estopped must have convinced the first court to
> adopt its position—a litigant is not forever bound to a
> losing argument.

*Petty*, 201 Wis. 2d at 348 (citing *Harrison*, 187 Wis. 2d at
497).

¶ 5. Olson contends that *Petty's* use of the terms
"both cases" and "first court" dictates that there must be
two distinct cases to invoke the doctrine. She argues
that judicial estoppel does not apply to her refusal to
disclose the settlement amount because her complaint
and the *Pierringer* release were submitted in a single
case. However, we do not need to address whether
judicial estoppel is available within the course of a
single proceeding. We conclude that on the facts of this
case, Olson's limit of her damages to $75,000 in her
complaint was not enough to meet the requirement of
"convincing the trial court to adopt her position."

¶ 6. Because "a litigant is not forever bound to a
losing argument," there must be an action of the court
adopting a party's position to give rise to judicial
estoppel. Thus, in *State v. Michels*, 141 Wis. 2d 81,

97–98, 414 N.W.2d 311 (Ct. App. 1987), Michels was judicially estopped from arguing on appeal that the evidence was insufficient to support his conviction for manslaughter, when he had requested the trial court submit manslaughter to the jury as a lesser-included offense of second-degree murder. Similarly, in *English-Lancaster*, 252 Wis. 2d 388, ¶ 22, English-Lancaster was judicially estopped from challenging the sufficiency of a cautionary instruction he had requested. We said: "This is classic judicial estoppel. The position English-Lancaster took in the trial court is clearly inconsistent with the one he assumes on appeal. At trial he *urged the court to generate a cautionary instruction* and now he maintains that a cautionary instruction was insufficient." *Id.* (emphasis added).

¶ 7. Here, Olson's first assertion was her demand in the *ad damnum* clause in her complaint for less than $75,000 in damages. Unlike the cases above, however, Olson has not yet successfully urged the court to take action based on her position. Rather than successfully requesting a jury instruction, as in *English-Lancaster*, or successfully requesting submission of a lesser-included offense, as in *Michels*, Olson has merely asked for a limited amount of damages. Therefore, we conclude that Olson's pleading an amount in controversy beneath the threshold for federal jurisdiction is not equivalent to convincing the court to adopt a position in her favor.

¶ 8. Next, we turn to the requirement of two "clearly inconsistent" positions. Olson argues the "clearly inconsistent" element of judicial estoppel was not met because she has consistently requested less than $75,000 in damages, and the settlement she

reached with Robbins & Meyers is not subject to that limit. Darlington asserts the trial court properly invoked judicial estoppel to prevent Olson from asserting two clearly inconsistent positions: first, that her damages were limited to less than $75,000, and then, that she did not have to disclose the amount she recovered from a settling joint tort-feasor. Without deciding the effect of the settlement amount on Darlington's remaining potential liability, we conclude that Olson's withholding the amount of a settlement with one joint tort-feasor is not clearly inconsistent with her previous pleading of a limit on the amount in controversy.

¶ 9. For judicial estoppel to apply, the two positions must be clearly inconsistent and have more than "[t]he mere appearance of inconsistency." *Petty*, 201 Wis. 2d at 350 n.5 (citation omitted). In *Harrison*, 187 Wis. 2d at 493–96, LIRC argued Harrison was judicially estopped from claiming in a state discrimination action that he was capable of performing his job, when he had stated before a federal administrative law judge in disability proceedings that he was not capable of performing his job. We concluded that judicial estoppel did not apply because the record did not establish whether the definition of "capable" under each action included the option of working with accommodations. *Id.* at 499–500. We thus concluded we could not find the two statements clearly inconsistent on the facts in the record. *Id.*

¶ 10. Similarly, in *Coconate v. Schwanz*, 165 Wis. 2d 226, 231, 477 N.W.2d 74 (Ct. App. 1991), we concluded that Coconate's failure to disclose the existence of a promissory note during divorce proceedings was not clearly inconsistent with his later action to collect on the note. The failure to list a note did not

723

meet the standard of "clearly inconsistent" with an assertion that the note was valid and enforceable. *Id.* Thus, "clearly inconsistent" means more than just a possibility of inconsistency from the facts on the record.[4]

¶ 11. Here, Olson has pleaded a limit on her damages and then withheld the amount of a settlement she reached with one joint tort-feasor. As in *Harrison* and *Coconate*, the two positions are not clearly inconsistent on the facts we have before us. There is no indication from the record that Olson is now asserting that she can recover more than $75,000 in damages by playing "fast and loose" with the courts as a "manipulative perversion" of the judicial process. *See Petty*, 201 Wis. 2d at 346–47, 354 (citations omitted). Therefore, we conclude that Olson has not asserted two clearly inconsistent positions as required to apply judicial estoppel. Because we conclude that the elements of judicial estoppel have not been met by the facts in this case, we reverse.

*By the Court.*—Order reversed.

¶ 12. DEININGER, J. (*concurring*). I agree with the majority that the doctrine of judicial estoppel does not provide a basis to order Olson to disclose at this time the amount she received in settlement of her claim

---

[4] Judicial estoppel has been properly invoked "mostly in criminal appeals where the defendant asserts one position at trial and a contrary position on appeal," because they present the clearest cases of inconsistent arguments. *Harrison v. LIRC*, 187 Wis. 2d 491, 496–97, 523 N.W.2d 138 (Ct. App. 1994) (citation omitted). We stated in *Harrison* that although there may be other types of cases in which judicial estoppel will apply, it should be invoked cautiously: "Judicial estoppel, after all, is an equitable determination and should be used only when the positions taken are *clearly* inconsistent." *Id.* at 497–98.

against Robbins & Myers, Inc. The majority mentions but does not address the related issues of whether the settlement amount may be disclosed to jurors at trial and whether the settlement amount has any bearing on the amount Olson may ultimately recover from the remaining defendants in this litigation. *See* majority opinion ¶ 1 n.2. Because these questions are likely to arise on remand, and because the answers to them may affect settlement negotiations between Olson and the remaining defendants, I would decide the questions now. I conclude that, not only is the settlement amount not discoverable at the present time, it is not admissible at trial and plays no role in determining the amount of any judgment Olson may obtain against the remaining defendants.

¶ 13. Because she has limited the damages she seeks in this litigation to an amount less than $75,000, Olson cannot obtain a judgment against the Webers and Darlington Mutual that awards more than that amount of damages. Olson did *not* allege, however, that she *suffered* less than $75,000 in damages. Rather, she simply chose, for strategic reasons, to limit any recovery in this litigation to less than that figure.[1] I conclude that Olson's strategic choice is not unlike that of a small claims plaintiff who has a claim against a defendant that exceeds $5,000 but chooses to proceed under Wis. Stat. ch. 799, thereby limiting the potential judgment to a maximum award of $5,000 in damages. *See, e.g., Bryhan v. Pink*, 2006 WI App 111, ¶¶ 12–20, 294 Wis. 2d 347, 718 N.W.2d 112 (concluding that, when a

---

[1] Olson's complaint contained the following allegation: "That the amount of damages sought and in controversy is less than the amount required for removal to the United States District Court . . . under Diversity [jurisdiction] . . . ."

small claims plaintiff's actual damages exceed the statutory award limitation, the court should apply any reduction for comparative negligence to the total damages found before applying the limitation).

¶ 14. The fact that one of the original defendants in this action chose to "buy its peace" by settling with Olson early in the litigation should have no bearing whatsoever on how the case is tried against the remaining defendants. A jury's apportionment of causal negligence among the Webers, Robbins & Myers and Olson does not require that jurors know how much Robbins & Myers paid Olson to be dismissed from the action. By the same token, the total amount of damages Olson suffered on account of her injuries does not depend in any way on the amount Robbins & Myers paid her to settle. The settlement amount is therefore not relevant to any issue likely to be tried by the remaining parties, and it would thus be inadmissible at trial absent unusual circumstances rendering the amount relevant for some other reason. *See* WIS. STAT. § 904.08 (Evidence of the settlement of a claim is not admissible "to prove liability for or invalidity of the claim or its amount.").

¶ 15. Similarly, the amount of the Robbins & Myers settlement will not affect the judgment that Olson might ultimately obtain against the remaining defendants. Once jurors have answered the apportionment of causal negligence and damages questions, the amount of damages, if any, for which the Webers and Darlington Mutual are liable can be determined, and that amount can be reduced if necessary to less than $75,000 in damages for purposes of the judgment. *Cf. Bryhan*, 718 N.W.2d 112, ¶¶ 12–20. Regardless whether the Robbins & Myers settlement amount turns out to be more or less than the damage award that Olson could have obtained against Robbins & Myers under the

726

jury's verdict, the settlement figure neither increases nor decreases the amount for which the Webers and their insurer may be liable. *See Pierringer v. Hoger*, 21 Wis. 2d 182, 191–93, 124 N.W.2d 106 (1963).

¶ 16. In sum, there is no legal or logical reason why the amount Robbins & Myers paid Olson to be dismissed from this action should affect the determination and potential limitation of the amount, if any, to be awarded to Olson in a judgment against the remaining defendants. Because the majority's decision does not adopt the foregoing rationale, thereby providing guidance to the parties and the circuit court on remand, I respectfully concur in only the result ordered by the majority opinion.