# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 8, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2273**

Cir. Ct. No. 2010FA185

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN RE THE MARRIAGE OF:

AMY L. FUSS,

PETITIONER-RESPONDENT,

KENNY DELEBREAU,

RESPONDENT,

V.

JAY L. FUSS,

RESPONDENT,

KIMBERLY JOHNSTON,

INTERESTED PARTY-APPELLANT.

APPEAL from an order of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Kimberly Johnston, pro se, appeals an order dismissing her claims against Amy Fuss and Kenny Delebreau.[1]  We affirm.

## BACKGROUND

¶2    Amy and Jay Fuss were divorced in 2011.  Following the divorce, Amy filed multiple contempt motions alleging that Jay had failed to comply with the terms of the marital settlement agreement, which was incorporated into the judgment of divorce.

¶3    In 2012, following a hearing, the circuit court found Jay in contempt for failing to remove Amy's name from a mortgage and for failing to make a property division payment to her.  The court sentenced Jay to six months in jail as a sanction for his contempt with purge conditions.  The record suggests that Jay purged the contempt.

¶4    In 2015, Amy filed a contempt motion alleging that Jay failed to make Section 71 payments and a property division payment.[2]  Jay failed to appear

---

[1]  For ease of reading, we refer to Amy Fuss and Jay Fuss by their first names throughout the remainder of this opinion.

[2]  Section 71 refers to a section of the Internal Revenue Code relating to alimony and separate maintenance payments.  *See* 26 U.S.C. § 71 (repealed 2017).  The repeal does not affect the disposition of this appeal.

at the contempt hearing, and, as a result, the circuit court issued a bench warrant for his arrest.

¶5      In 2016, Jay appeared before the circuit court as a result of the warrant, and the court found him in contempt and sentenced him to another six months in jail. As part of its order, the court ordered that a constructive trust be imposed on Jay's assets to secure his satisfaction of his financial obligations to Amy. The order additionally provided that Jay would be released from his jail sentence if he purged his contempt by meeting certain financial obligations to Amy. Jay satisfied the purge conditions of the contempt order, and the court removed the constructive trust order as unnecessary at that time.[3]

¶6      In October of 2017, Amy again filed a contempt motion based upon Jay's failure to make Section 71 payments. At a December 7, 2017 hearing, Jay was found in contempt and sentenced to six months in jail. He was immediately taken into custody, and the circuit court imposed a constructive trust on his assets, which included his home, personal property, and vehicle.

¶7      Johnston was present at the hearing and told the circuit court that she and Jay lived together and that everything in the home belonged to her. The court's written order referenced that Johnston lived in Jay's home and that Johnston was instructed during the hearing not to interfere with the court's order or remove any assets in the constructive trust without the prior permission of Amy's attorney. The court's order provided: "Ms. Johnston is to work with

---

[3] Amy and Kenny Delebreau make this representation in their response brief without a supporting record citation. Because it appears to be undisputed, we include it here.

[Amy's attorney] in order to resolve any items that she makes a claim to as her property."

¶8     The following day, Amy's attorney sent a letter to the circuit court stating that she believed Johnston went to Jay's residence immediately after the hearing and began removing property.  Shortly thereafter, Amy's attorney filed another letter with the court advising that police officers had removed Johnston from Jay's home.

¶9     On December 21, 2017, Jay made a payment to Amy sufficient to purge his contempt, was released from jail, and was allowed to return to his home. The constructive trust remained in place.

¶10    On July 6, 2018, Johnston initiated a small claims lawsuit against Amy and Delebreau, who lived with Amy, alleging that they improperly removed items belonging to her, which were located in Jay's home when the constructive trust went into effect.  Johnston, who was represented by counsel, Amy, and Delebreau subsequently stipulated to have the small claims case resolved by the circuit court presiding over the family court case.

¶11    Amy, Delebreau, and Johnston testified at the hearing that took place on August 29, 2019, to address Johnston's small claims case.  The court found that Johnston did not satisfy her burden of proof that Amy or Delebreau removed Johnston's property, and dismissed her claims against them.  The court additionally concluded that it was appropriate to set up the constructive trust as a

remedy in the family court case despite the impact it may have had on property owned by Johnston. Johnston now appeals.[4]

## DISCUSSION

¶12 The core issues on appeal, as best as we can discern them, are as follows: (1) whether Johnston's property was unlawfully or unreasonably seized and disposed of under the constructive trust; (2) whether Johnston was forced to litigate a case to which she was not a party; (3) whether Johnston was evicted in violation of her rights to equal protection and due process; and (4) whether the circuit court harassed and retaliated against her.[5] We address each issue in turn.

---

[4] Johnston's notice of appeal indicates that she is appealing final judgments or orders entered on August 29, 2019 and May 7, 2018. An "Order from August 29, 2019 Hearing" was entered on November 5, 2019. However, no judgment or order was entered on May 7, 2018, nor did any hearing take place on that date. A hearing was held on May 9, 2018, which related to Jay's request to terminate Section 71 payments. There was a hearing on May 7, 2019, related to Jay's contempt, and there was a discussion during the hearing about its impact on Johnston's small claims case. After the hearing, both Johnston's and Amy's attorneys represented to the circuit court that they had an "understanding. We have been very close to getting everything resolved. We are still working at it," the court concluded that there was an agreement to hold off on scheduling or addressing Johnston's small claims issues. It does not appear that a written order was ever entered after this hearing from which Johnston could appeal. Consequently, we focus on the August 29, 2019 hearing, on which the order that is the subject of this appeal is based.

[5] Johnston's arguments are difficult to follow, and her citations to legal authority are sparse. *See* WIS. STAT. RULE 809.19(1)(e) (2019-20) (specifying that an appellant's brief "must contain … [a]n argument … with citations to the authorities, statutes and parts of the record relied on"). To the extent Johnston intended to make other arguments that we do not directly address, we reject them on the grounds that they are inadequately briefed. *See State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994) ("We will not decide issues that are not, or inadequately, briefed.").

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

***(1) Whether Johnston's property was unlawfully or unreasonably seized and disposed of under the constructive trust.***

¶13     Johnston contends that on December 7, 2017, her property "was seized or in the alternative [o]rdered into a [c]onstructive [t]rust" in an action in which she was not a party.[6]  In order to be reimbursed or indemnified for her "stolen property," Johnston maintains that she had to file a separate small claims case.[7]

¶14     "The constructive trust is an equitable device created by law to prevent unjust enrichment, which arises when one party receives a benefit, the retention of which is unjust to another." ***Wilharms v. Wilharms***, 93 Wis. 2d 671, 678, 287 N.W.2d 779 (1980).  "Conceptually, it is a remedy 'used to address situations in which the legal and beneficial interests in a particular piece of property lie with different people.'" ***Pulkkila v. Pulkkila***, 2020 WI 34, ¶29, 391 Wis. 2d 107, 941 N.W.2d 239 (citation omitted).  The person against whom the trust is imposed need not be a wrongdoer. ***Wilharms***, 93 Wis. 2d at 679.

¶15     "We review the [circuit] court's decision to impose a constructive trust under an erroneous exercise of discretion standard." ***Pluemer v. Pluemer***,

---

[6] Johnston references December 7, 2019, in her appellate briefs; however, based on the record, it appears she means December 7, 2017.

[7] Amy and Delebreau highlight that the constructive trust over Jay's assets was first imposed at the December 7, 2017 hearing, and the related order was entered on December 8, 2017.  Johnston's notice of appeal in this matter was filed nearly two years later.  This was long after the time she claims her property was stolen and far outside the time limits for appealing the December 8, 2017 order. *See* WIS. STAT. § 808.04(1) (requiring that "[a]n appeal to the court of appeals must be initiated within 45 days of entry of a final judgment or order appealed from if written notice of the entry of a final judgment or order is given … or within 90 days of entry if notice is not given").  The circuit court did, however, address the impact of the constructive trust on various items of Johnston's property in the underlying order that is the subject of this appeal.  Consequently, we will do the same.

2009 WI App 170, ¶9, 322 Wis. 2d 138, 776 N.W.2d 261. We will sustain a discretionary act where the court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Gaugert v. Duve*, 2001 WI 83, ¶44, 244 Wis. 2d 691, 628 N.W.2d 861.

¶16 We note at the outset the record reflects that the court gave Johnston an opportunity to work with Amy's attorney to retrieve her personal property. This opportunity was discussed during the August 29, 2019 hearing. In their response, Amy and Delebreau indicate that Johnston did not take advantage of this opportunity, and Johnston does not suggest otherwise. Consequently, Johnston effectively forfeited any legal right she may have had to complain about the taking of her personal property by not taking advantage of the opportunity to do so when it presented itself. *See State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (explaining that "'forfeiture is the failure to make the timely assertion of a right'" (citation omitted)); *see also Liberty Trucking Co. v. DILHR*, 57 Wis. 2d 331, 342, 204 N.W.2d 457 (1973) (An appellate court may sustain a lower court's holding on a theory or on reasoning not presented to the lower court.). We also note that Johnston voluntarily placed any of her personal property in a residence that she did not own and without a rental agreement, thus putting it at risk as being treated as Jay's property.

¶17 In any event, during the hearing and in its related order, the circuit court explained the applicable legal standards and the equitable principles that drove its decision to impose the constructive trust in this matter "in an effort to preserve assets," which included some of Johnston's property. Insofar as the constructive trust impacted Johnston, the court found that even though she was not a named party, "she had a close relationship with Mr. Fuss and … was connected

with wrongdoing." Johnston makes no argument that the court's findings were clearly erroneous.

¶18 Under the circumstances of this case, the circuit court properly exercised its discretion when it imposed the constructive trust, which encompassed Johnston's personal property located in Jay's residence. Johnston's claim that her property was unlawfully or unreasonably seized and disposed of under the constructive trust fails.

### (2) Whether Johnston was forced to litigate a case to which she was not a party.

¶19 On this issue, Johnston presents a one-sentence argument in her opening brief without any citation to legal authority. We need not consider unsupported arguments. *M.C.I., Inc. v. Elbin*, 146 Wis. 2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988). Regardless, she contends that in order to be reimbursed for her "stolen property," which was "unlawfully" made part of the constructive trust in the family law action to which she was not a party, she had to file a small claims case. To the extent this is an additional argument that her property should not have been included in the constructive trust, this court has already addressed that issue.

¶20 Insofar as Johnston is now objecting that her small claims case was heard by the circuit court presiding over the family court case, she stipulated to that course of action. The doctrine of judicial estoppel prevents Johnston from adopting an inconsistent position on appeal. *See generally Olson v. Darlington Mut. Ins. Co.*, 2006 WI App 204, ¶4, 296 Wis. 2d 716, 723 N.W.2d 713. Consequently, this claim also fails.

*(3) Whether Johnston was evicted in violation of her rights to equal protection and due process.*

¶21    In what appears to be an issue raised for the first time on appeal, Johnston argues that she was not properly evicted from Jay's home.  We decline to reach the merits of this argument.  "Arguments raised for the first time on appeal are generally deemed forfeited."  *State Farm Mut. Auto. Ins. Co. v. Hunt*, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633 (citation omitted).  Johnston has not provided a persuasive reason for this court to deviate from our general rule.

*(4)  Whether the circuit court harassed and retaliated against Johnston.*

¶22    Lastly, Johnston claims that it is clear from the December 7, 2017 hearing that she was harassed by the circuit court.  Johnston contends that the court "does not like" her or Jay and, as a result, unlawfully took her property and gave it to Amy.  She lists various remarks and comments made by the court during the underlying proceedings, but she does not otherwise provide analysis or citation to legal authority.

¶23    We construe this as a claim of judicial bias.  When analyzing such a claim, we "presume that the judge was fair, impartial, and capable of ignoring any biasing influences."  *See State v. Gudgeon*, 2006 WI App 143, ¶20, 295 Wis. 2d 189, 720 N.W.2d 114.  The burden is on the party asserting judicial bias to show bias by a preponderance of the evidence.  *State v. Herrmann*, 2015 WI 84, ¶24,

364 Wis. 2d 336, 867 N.W.2d 772. With her completely undeveloped argument on this issue, Johnston has failed to rebut the presumption of impartiality.[8]

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] Amy and Delebreau, in the last sentence of their response brief, ask that this court consider awarding them frivolous appeal costs. This assertion is insufficient to warrant our review of the issue. *See Howell v. Denomie*, 2005 WI 81, ¶19, 282 Wis. 2d 130, 698 N.W.2d 621 (A party seeking to assert "frivolousness must do so by making a separate motion to the court, whereafter the court will give the parties and counsel a chance to be heard. We caution that a statement in a brief that asks that an appeal be held frivolous is insufficient notice to raise this issue."). No separate motion was made in this case.